STATE EX REL. CLAUDE C. COLLINS, Relator, v. JAMES S. ROONEY, Judge of the Circuit Court of Clay County, Missouri, Respondent, No. 42374—235 S. W. (2d) 260.

Court en Banc, December 15, 1950.

*Alan F. Wherritt* for relator.

*Conn Withers* for respondent.

[260]  HYDE, C. J.—Prohibition to prevent respondent Judge from condemning relator's real estate for right of way for levee construction under an amended plan of reclamation of the North Kansas City Levee District of Clay County. The petition for change of plan was filed March 18, 1949 and a decree authorizing it was entered August 7, 1950. Commissioners have been appointed and are ready to assess benefits and damages in accordance with the amended plan.

The District was organized in 1909, by decree of the Circuit Court of Clay County under Article 7, Chapter 122, R. S. 1899. Its existence was extended for 25 years in 1934. The District includes 2585 acres; and on January 1, 1950, 177 acres of it was annexed to Kansas City as a part of a large area annexed by the City in Clay County. (See State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S. W. (2d) 762.) Relator is a landowner and taxpayer of said District, owning land (in the area annexed by Kansas City) which the District seeks to condemn for location of its levee. He also owns other land that will be taxed to pay for this construction work.

The question for decision is whether the Circuit Court of Clay County has authority to proceed with condemnation and assessment of benefits and damages in a District which includes part of Kansas City. Relator relies on In re East Bottoms Drainage and Levee District, 305 Mo. 577, 259 S. W. 89, in which we held that a drainage and levee district could not be organized by the Circuit Court of Jackson County composed of land partly in Kansas City and partly outside its limits in that county. We said there was no statutory authority for including land in the City in such a drainage and levee district and pointed out the provisions of the Kansas City Charter which gave it authority to construct such works within the City, condemn land therefor, and assess benefits and damages from their construction. (It is conceded that [261] substantially the same provisions are included in the new Charter of Kansas City which was held constitutional in State ex rel. Otto, Atty. Gen., v. Kansas City et al., 310 Mo. 542, 276 S. W. 389.) We held in the East Bottoms case that "the charter provision of Kansas City providing for such levees and drains within the city is a matter of local municipal concern, and, therefore, properly included in such charter, and controls the establishment of levee and drainage districts in said city;" and that "the trial court reached a correct conclusion in holding that property within the corporate limits of Kansas City, Mo., could not be legally included within the boundaries of the proposed district."

However, we think the situation here is entirely different. This is not a case of organizing a new district which is seeking to take in a part of the territory of Kansas City. Here we have a properly organized district that was in existence for over 40 years without any of its territory being in Kansas City. The question is whether the annexation by Kansas City of a part of an area (less than seven per cent of the total) which was already legally included in the district, has the effect of cutting down or changing the boundaries, authority, rights and taxing powers then vested in it by the laws of the state. Kansas City does not claim that this is true; and has done all that it could to consent to the plan, and the construction

of the works for which it provides, by adopting an ordinance approving and ratifying it insofar as it concerns territory located within its limits. The proposed levee is a unit of the flood protection project approved by the federal government, known as the Pick-Sloan Plan for the improvement and development of the entire Missouri River Basin and this ordinance so recites. It was also determined and recited in this ordinance that "it is not feasible or practical from a physical, engineering, construction and maintenance standpoint to separate that part of said levee district lying within the corporate limits of Kansas City from the remainder of said district and to administer said area separately or as part of any other levee or flood protection program of Kansas City, and that said area should remain a part of said levee district for purposes of flood protection." An important part of the proposed levee must be built within the area annexed by Kansas City but, of course, a much greater part of it is outside the City.

A similar situation was before the Supreme Court of Louisiana in Capitol City Oil Co. v. Day, 147 La. 734, 85 So. 888. There the boundary of a levee district was fixed as "all that part of the parish of East Baton Rouge, lying south of the City of Baton Rouge." The boundary of the City was extended to the south by a new charter and it was contended that this changed the boundary of the district and terminated its authority over the annexed area. The Court overruled this contention, saying: "That these limits, a matter so vital, should be left to shift with the expansion or shrinkage of a city, or with the changes in the limits of some adjoining political subdivision of the state, is not to be thought of." In that case both the City and the District had authority to levy taxes for drains and levees but the Court held that this was immaterial because if both levied maximum rates the total would not exceed constitutional limitations. The question of whether the City has concurrent jurisdiction with the District to make assessments for drains and levees in the area herein involved is not now presented and it is not necessary to decide it in this case. (See 17 Am. Jur. 792, Sec. 21; 28 C. J. S. 242, Sec. 7; In re Little River Drainage Dist., 236 Mo. 94, 139 S. W. 330.) However, the North Kansas City Levee District is a municipal corporation and public agency of the State organized under its police power; and, under the Constitution of Missouri, it is authorized to exercise taxing and other powers and levy assessments to pay for its works to the extent that such powers have been granted to it by the General Assembly. (Article 7, Chapter 122, R. S. Mo. 1899; Article 7, Chapter 79, R. S. Mo. 1939; State ex rel. Kinder v. Little River Drainage District, 291 Mo. 267, 236 S. W. 848; [262] Des Moines & Mississippi Levee District No. 1 v. Chicago, B. & Q. R. Co., 240 Mo. 614, 145 S. W. 35; Constitution of Missouri, 1945, Article X, Sections 1

and 15.) Our conclusion is that the annexation of a part of the territory of the District by Kansas City did not take away any of these powers, and did not take this territory out of the District or change its boundaries or its authority over all of its original area. We, therefore, hold that the Circuit Court of Clay County has jurisdiction and authority to proceed in accordance with the amended plan for reclamation approved by its decree.

Our preliminary rule in prohibition is discharged. All concur.